364 P.2d 1024

Fred R. LAW and Gertrude R. Law, husband and wife, Plaintiffs and Respondents,

v.

UINTA OIL REFINING COMPANY, a corporation, and Utah Cooperative Association, a corporation, Defendants and Appellants.

No. 9333.

Supreme Court of Utah.

Sept. 20, 1961.

Rich, Elton & Mangum, Salt Lake City, for appellants.

Therald N. Jensen, Price, for respondents.

HENRIOD, Justice.

Appeal from a verdict for plaintiffs in an action for fire damage resulting from defendant's alleged negligence. Affirmed with costs to plaintiffs.

Canvassing the believable, competent, but in a considerable degree, disputed evidence more favorably in support of the verdict, as we must under familiar appellate requirements, the following abstract reasonably may be reflected in the record:

The Laws, husband and wife, had operated a service station in Price, Utah, for seven years prior to the fire. A storage tank, having a vent on top reaching 2 or 3 feet above the roof of the corrugated iron storage shed in which it was housed, had been loaded and drained innumerable times during the 7-year period by means of a hose reaching from tanker trucks outside the building to the storage tank within. The storage shed was partially aerated by an open window and door. The transfer was accomplished by means of a pump operated by an electric motor situate inside the building, started and stopped by a switch outside the building. During all the 7 years, the loading-unloading process had continued without incident until the day of the fire,—a hot September day.

On that day, in which defendant was to unload 2,137 gallons of gas, one Webb, defendant's tanker driver, was directed by one Burdick, plaintiffs' service station attendant, where to place the tanker and how to connect the loading equipment. This was done, was inspected by Burdick who stated the connections were satisfactory. The unloading operation began and continued without incident until an explosion occurred some 15 to 20 minutes later after the following had ensued: After the unloading began, Webb left the area and the equipment and went to a nearby cafe for coffee, and was seen there some 15 or 20 minutes thereafter and shortly before the explosion. In the interim, *before such explosion,* one Olsen, operator of a service station about a block and a half beyond the Law place, passed the latter in an open pickup truck and saw gas running down the gutter from the storage shed, he thought, for a distance of about 350 feet. He not only could smell it, but saw vapor arising from it on what he termed was a hot day. When he arrived at his own station but before he alighted from his truck, he heard the explosion, and saw the fire. After the explosion Mrs. Law, who, with her children, was hustled out of the station, Shaw, station employee, Burdick, another employee, and a Mr. Stanfield, Price mechanic, plaintiffs' witnesses, saw a "wall of flame"

or a fire in the gutter, and a Mr. Davies, one of defendant's own witnesses, testified that he saw the fire in the gutter. Immediately after the explosion, Webb, the truck driver, ran from the area, on fire, and shortly died without being able to give any details.

Mr. Hatch, defendant's assistant manager, who examined the scene and equipment 4 or 5 hours after the fire, testified that the tanker had a damaged mudguard and tire, but otherwise it was not damaged. When asked if he knew the gallonage that was consigned to the Law place, he said he had checked and 2,137 gallons were to be delivered. When asked if he had examined the tank from which the gas was drawn, he said the "twenty-two ought [sic] one compartment that contained the white gas [1] was entirely clear or dry. Empty." There is nothing in the record to indicate what "twenty-two ought one" referred to but quite a reasonable inference can be indulged that it had reference to a 2,201 gallon tank capacity,—64 gallons in excess of the 2,137 gallons ordered. It becomes obvious, therefore, that indulging such an inference, a reasonable jury might conclude that there was a 64 gallon overflow out of the storage tank vent onto the storage tank, part of which gasoline flowed down the gutter a distance of several hundred feet.

Everyone in this case, including the two expert witnesses, would concede that vaporous gasoline is highly dangerous. One expert, without contradiction, attributed the accumulation of vaporous gasoline in and about the storage shed either "from a leaky fitting or poor connection on the pump, *or an overflow of the tank,*" and again that it would spring from "either leaky and improper fittings on the pump *or overflowing.*"

Other statements of the experts, both as to cause of the explosion, and as to custom concerning duties of deliverors and deliverees of gasoline, are so hopelessly in conflict, as to cancel each other out, the jury being entitled to believe all or any or none of them.

On the above facts we are asked to conclude that plaintiffs did not make out a prima facie case and the jury was left to speculate as to liability and causation. Our answer is that it was negligent for defendant's agent unnecessarily to leave the area during the unloading operation; that although such negligence solely and ipso facto could not be a predicate for liability, without sustenance by plaintiffs of the further burden of showing causation, we believe and hold that if defendant permitted an overflow of the storage tank on a hot day, such lack of suppression supplied the causal link. Under such circumstances, the

1. That which the Laws stored in the storage tank

jury believing them, defendant, having loosed a highly dangerous substance subject to volatility on a hot day, must be held accountable for the reasonably foreseeable consequences that might flow from such a created and dangerous condition. Further specifics requiring proof that the explosion was or was not caused by a spark from the electric motor, would seem to be uncontrolling as would be the circumstance, for instance, of a cigarette having been tossed carelessly by a passing motorist, or one possibly held by defendant's own agent, or the exhaust from passing vehicles, spontaneous combustion or a legion of other conceivable events that might ignite the potentiality of danger created by the uncontrolled gasoline.

A negligent loosing of a dangerous substance at a site where such myriad circumstances reasonably could be foreseen to function, seems of itself to be the causa causans of such foreseeable damage, where speculation ends and permissible inference and foreseeability legally and effectively would be conceived, born and rendered applicable in determining liability. Saying so is not to disagree with defendant's authorities anent speculation by a jury on unestablished facts where such reasonable inference or foreseeability is absent. But, if the jury believed there was an unwarranted overflow or other careless failure to control the gasoline,—which it could do on believable facts adduced here,—such authorities would be uncontrolling.

■ Defendant urges error in telling the jury "it is of no consequence that you do not determine the exact point at which the gasoline escaped, nor the exact manner in which it was ignited." The instruction was inoffensive for more than one reason. First, the primary duty of the plaintiffs was to establish a prima facie case of negligence and causation. They made such a showing of negligence by exposing Webb's absence from the area, and one of causation by displaying a rather voluminous escape and spreading of gasoline. As we pointed out, from that juncture proof of causal specifics would be unnecessary. Secondly, it is difficult to discern any prejudice in the instruction in view of the fact it also contained an injunction that the jury should hold against plaintiffs if they believed plaintiffs to have been guilty of contributory negligence as outlined in Instruction 3, to the effect that a) they had defective equipment, or b) negligently maintained it so that a spark from the motor might ignite the gasoline.

■ We believe our observations answer defendant's contention that it was error not to have given an instruction on conjecture. It well may have been better to have given such an instruction, but the jury having found as it did and its verdict reasonably having been one not founded on conjecture, but upon believable facts point-

ing to actionable negligence, such failure to instruct appears innocuous.

■ We think also that no error was committed in failing to instruct on the presumption of due care for Webb's own safety, since the jury were told that they could not find him negligent unless they so found from a preponderance of the evidence.

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.